IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ANGELITA V., § | |
|     PLAINTIFF, § | |
| § | |
| V. § | CASE NO. 3:18-CV-2324-BK |
| § | |
| COMMISSIONER OF § | |
| SOCIAL SECURITY ADMINISTRATION, § | |
|     DEFENDANT. § | |

## MEMORANDUM OPINION

Before the Court are the parties' cross-motions for summary judgment. For the reasons detailed here, *Plaintiff's Motion for Summary Judgment*, Doc. 18, is **DENIED**, *Defendant's Motion for Summary Judgement*, Doc. 19, is **GRANTED**, and the Commissioner's decision is **AFFIRMED**.

## I. BACKGROUND

### A. Procedural History

Plaintiff seeks judicial review of a final decision by the Commissioner partially denying her application for disability, disability insurance benefits, and supplemental security income under the Social Security Act (the Act). Doc. 1 at 1. After Plaintiff's claims were denied at all administrative levels, she appealed to this Court pursuant to 42 U.S.C. § 405(g); Doc. 1 at 1.

### B. Factual Background

Plaintiff applied for disability insurance benefits (SSDI) and supplemental security income (SSI) in January 2014. Doc. 1 at 1. After the initial denial of benefits, an ALJ found that, on and before Plaintiff's DLI, Plaintiff had the medically determinable impairment of rheumatoid arthritis, but that Plaintiff did not have a disability within the meaning of the Act because her rheumatoid arthritis was not disabling for a continuous period of at least twelve

months beginning on or before her DLI. Doc. 12-1 at 29-30. However, the ALJ found that Plaintiff was disabled under the Act, as of her SSI application date of January 14, 2014, due to a combination of severe impairments, including: obesity, hypercholesterolemia, diabetes, advanced coronary artery disease, post-coronary artery bypass graft surgery, rheumatoid arthritis, and chronic renal disease. Doc. 12-1 at 30-31. The ALJ's findings resulted in Plaintiff being eligible for SSI benefits beginning January 14, 2014, but the denial of SSDI benefits. Doc. 1 at 1.

Plaintiff now challenges the ALJ's holding that she was not disabled as a result of her rheumatoid arthritis on or prior to her DLI of March 31, 2011, and the resulting denial of SSDI. Doc. 18-1 at 1.

### C. Medical Testimony and Evidence

As relevant to the limited issues presented here, an administrative hearing was held before the ALJ on February 9, 2016. Doc. 12-1 at 66. While discussing that the "first presentation of [possible disabling symptoms] was on April 26, 2011" (about three weeks after Plaintiff's DLI), the ALJ advised Plaintiff's counsel that "[j]udges are not free to simply pick an onset date that is not directly supported by medical evidence," and that if Plaintiff wanted to pursue the application for SSDI, it would involve "bringing in either a medical expert . . . or . . . a medical source statement from a treating source." Doc. 12-1 at 68. Counsel subsequently stated: "Your Honor, after conferring with my client, and, again, speaking abut the implications of her DLI and how remote it is, we have decided to ask the Court for more time so we can get prior record and a medical source statement from an expert explaining whether the Claimant's residual functional capacity was then, as it is, since the date of the application." Doc. 12-1 at 70.

In April 2017, the ALJ held a supplemental hearing at which Dr. Steven Goldstein, M.D., testified as a medical source regarding Plaintiff's condition on or before her DLI, based on his

2

review of her medical records. Doc. 12-1 at 45. A vocational expert also testified, in essence, that a hypothetical person with Plaintiff's RFC for the period prior to and including Plaintiff's DLI could perform Plaintiff's past relevant work. Doc. 12-1 at 57-60. The ALJ also discussed with Plaintiff's counsel Dr. Ramos' treating source statement and letter, noting that while Dr. Ramos opined that Plaintiff was disabled before her DLI, he first treated Plaintiff in 2014, well after her DLI of March 31, 2011. Doc. 12-1 at 53-57.

## II. APPLICABLE LAW

An individual is disabled under the Act if she is "[unable] to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least twelve months. 42 U.S.C. § 423(d)(1)(A). In determining whether an individual is disabled, the Commissioner uses a five-step inquiry: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the Regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing her past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes her from performing his past work, other factors including age, education, past work experience, and RFC must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curiam) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or

3

is not disabled. *Id.* If the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Grid Rules, vocational expert testimony, or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's decision is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

### III. PARTIES' ARGUMENTS AND ANALYSIS

In considering the parties' summary judgment arguments, the Court has relied upon their assessment of and citation to the evidence of record. The Court is not under any obligation to probe the record to find supporting evidence for one side or the other. *See* FED. R. CIV. P. 56 (the movant and opponent of a motion for summary judgment must support their positions by "citing to particular parts of materials in the record"); *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (the court has no obligation under Rule 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment").

4

## A. Parties' Arguments

Plaintiff argues that the ALJ erroneously concluded Plaintiff's rheumatoid arthritis was not a disability under the meaning of the Act prior to her DLI and disregarded Dr. Goldstein's opinion that Plaintiff's rheumatoid arthritis was severe at the time of her DLI. Doc. 18-1 at 5. Plaintiff further contends that since the ALJ found Plaintiff had a disability in January 2014, she also had a disability on and prior to her DLI, since rheumatoid arthritis symptoms "come and go" as patients experience flare-ups. Doc. 18-1 at 6. In response, Defendant argues that the ALJ properly determined that Plaintiff's rheumatoid arthritis was not a disability under the meaning of the Act prior to her DLI. Doc. 19-1 at 2.

## B. Analysis

The ALJ's determination that Plaintiff's rheumatoid arthritis was not a disability under the Act on or prior to her DLI is supported by substantial evidence. The medical evidence demonstrates that Plaintiff experienced no symptoms of rheumatoid arthritis prior to her DLI. On March 11, 2011—20 days prior to the DLI—Plaintiff denied having any adverse symptoms, including joint pain, stiffness or limitation of motion, muscle aches, cramping, or neurological symptoms. Doc. 12-1 at 29. Upon examination, Plaintiff had "no active arthritis, no join deformity, and no range of motion (ROM) limitations were noted. Deep tendon reflexes were normal at 2/4 in all extremities; there was no motor or sensory deficit; and strength was normal at 5/5 bilaterally and symmetric." Doc. 12-1 at 544-45. The medical records prior to that date also make no mention of arthritic symptoms.

Moreover, Plaintiff's argument that the ALJ disregarded Dr. Goldstein's testimony is belied by the record. Indeed, Dr. Goldstein's testimony that Plaintiff's rheumatoid arthritis was acute and not continuous over twelve months supports the ALJ's conclusion. Doc. 12-1 at 48-

5

50. When asked by the ALJ at the supplemental hearing for his opinion of whether "the medical evidence . . . establish[ed] the existence of any physical impairment or combination of impairments of more than minimal severity before the [Plaintiff's] date last insured, which is March 31st, 2011," Dr. Goldstein answered "yes" and testified, "I believe the record shows that [Plaintiff has] been diagnosed as having rheumatoid arthritis." Doc. 12-1 at 48. Dr. Goldstein further explained:

> … **the notes that I have are more episodic**; in other words, I think she had an elevated sed rate of 76, and I saw some changes on X-ray of arthritis, and I saw tenderness in the joints, but **I did not see that over a period of time with treatment**. So, **it's difficult to know whether or not she could meet a listing because of the time requirement. So, in other words, an acute episode, you don't know that it lasts 12 months**.

Doc. 12-1 at 48-49 (emphasis added). He also testified that Plaintiff's "cardiac problems and [her] renal problems . . . seem to have developed in 2013," and while "present to some degree" before that, they were "not anywhere near anything that would be considered a severe impairment." Doc. 12-1 at 49.

Additionally, the record reveals that the ALJ considered but appropriately gave little weight to Dr. Ramos' opinion regarding the limitations caused by Plaintiff's rheumatoid arthritis before Plaintiff's DLI, given that Dr. Ramos only began treating Plaintiff in 2014, several years after her DLI. Doc. 12-1 at 1168-1172. The lack of any medical evidence to support Dr. Ramos' opinion and Plaintiff's failure to seek any treatment for her rheumatoid arthritis prior to her DLI further support the ALJ's conclusion. *See Clayborne v. Astrue*, 260 F. App'x 735, 737 (5th Cir. 2008) (affirming district court and concluding ALJ's credibility determination was supported by substantial evidence when claimant testified he suffered from high levels of pain, but did not seek treatment for a period of almost two years).

Finally, that Plaintiff's impairments prior to her DLI were successfully treated with pain medication also supports the ALJ's conclusion that she was not disabled on or before her DLI. *See Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1998) (citing 20 C.F.R. § 404.1530, 416.930) ("If an impairment reasonably can be remedied or controlled by medication or therapy, it cannot serve as a basis for a finding of disability."). Doc. 12-1 at 409.

## IV. CONCLUSION

In sum, the ALJ's determination that Plaintiff's rheumatoid arthritis was not a disability under the Act prior to her DLI is supported by substantial evidence. Accordingly, *Plaintiff's Motion for Summary Judgment*, Doc. 18, is **DENIED**, *Defendant's Motion for Summary Judgement*, Doc. 19, is **GRANTED**, and the Commissioner's decision is **AFFIRMED**.

**SO ORDERED** on November 21, 2019.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE